IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NOBLE SYSTEMS CORP., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:17-CV-2274-N |
| | § | |
| ACQUEON TECHNOLOGIES, INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER

This Order addresses the construction of several disputed claim terms pursuant to

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517

U.S. 370 (1996). Plaintiff Noble Systems Corporation ("Noble") contends that Defendant

Acqueon Technologies, Inc. ("Acqueon") infringed United States Patent Nos. RE46,420

('420 Patent), RE46, 478 ('478 Patent), 9,635,183 ('183 Patent), and 9,521,257 ('257 Patent).

Having reviewed the relevant intrinsic evidence in the record, and such extrinsic evidence

as necessary, the Court construes the disputed terms and phrases as provided below.[1]

## I. BACKGROUND OF THE INVENTIONS

The patents in suit relate to the operation of an outbound call center. An outbound

call center facilitates placing telephone calls to a large number of people for some common

purpose, such as telemarketing, collecting unpaid bills, or political campaigns. The two main

---

[1]In view of the Court's rulings on claim construction it denies the following motions: motion for clarification [60], motion to strike [75], and motion for leave [83].

elements involved are a list of persons to be called, and a pool of agents – people employed by the call center to talk to those persons to be called.[2]  In general, the goal is for agents to maximize the amount of time they actually spend talking to the persons to be called.  It is well-known that it may take multiple attempted calls to place a call successfully to a responsive person, because of, e.g., no answer, wrong numbers, busy signals, hang-ups, answering machines.  It is inefficient for agents to place multiple calls manually until they reach a responsive person.  A solution in the prior art was to use automatic telephone dialing devices that would place multiple calls, and when one successfully made a connection with a responsive person, it would transfer the call to the next available agent.

People generally do not enjoy being called by automatic telephone dialing devices. Consequently, the use of such devices is regulated in a variety of ways.

Generally speaking, the patents in suit involve systems and methods of operation for outbound call centers so that they operate efficiently and in compliance with applicable regulatory requirements.

## II. CLAIM CONSTRUCTION STANDARDS

### A. Basics

Claim construction is a question of law for the Court, *see Markman*, 517 U.S. at 391, although it may involve subsidiary factual questions.  *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 836-39 (2015).  In construing the claims of a patent, the words comprising the claims "are generally given their ordinary and customary meaning" as

---

[2]This is a disputed term that will be discussed at greater length below.

understood by "a person of ordinary skill in the art in question at the time of the invention."

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) (citations and

internal quotation marks omitted). Accordingly, courts must determine the meaning of claim

terms in light of the resources that a person with such skill would review to understand the

patented technology. *See id.* at 1313 (citing *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133

F.3d 1473, 1477 (Fed. Cir. 1998)). First, "the person of ordinary skill in the art is deemed

to read the claim term . . . in the context of the entire patent, including the specification." *Id.*

If the specification "reveal[s] a special definition given to a claim term by the patentee that

differs from the meaning it would otherwise possess . . . , the inventor's lexicography

governs." *Id.* at 1316. Likewise, if "the specification . . . reveal[s] an intentional disclaimer,

or disavowal, of claim scope by the inventor . . .[,] the inventor's intention, as expressed in

the specification, is regarded as dispositive." *Id.* (citation omitted). While the claims

themselves provide significant guidance as to the meaning of a claim term, the specification

is generally dispositive as "it is the single best guide to the meaning of a disputed term." *Id.*

at 1314-15 (internal quotation marks omitted).

      In addition to the specification, courts must examine the patent's prosecution history

– that is, the "complete record of the proceedings before the PTO and includ[ing] the prior

art cited during the examination of the patent." *Id.* at 1317 (citation omitted). "Like the

specification, the prosecution history provides evidence of how the PTO and the inventor

understood the patent." *Id.* (citation omitted). In particular, courts must look to the

prosecution history to determine "whether the inventor limited the invention in the course

of prosecution, making the claim scope narrower than it would otherwise be." *Id.* (citations omitted). "[W]here the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003).

Finally, in addition to evidence intrinsic to the patent at issue and its prosecution history, courts may look to "extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" *Phillips*, 415 F.3d at 1317 (quoting *Markman*, 52 F.3d at 980). In general, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.* at 1318.

When the intrinsic evidence, that is the patent specification and prosecution history, unambiguously describes the scope of a patented invention, reliance on extrinsic evidence, which is everything outside the specification and prosecution history, is improper. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996). While the Court may consult extrinsic evidence to educate itself about the invention and relevant technology, it may not rely upon extrinsic evidence to reach a claim construction that is clearly at odds with a construction mandated by the intrinsic evidence. *See Key Pharm. v. Hercon Labs. Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998).

### B. *"Nonce" Words and Means Plus Function*

Aqueon contends that certain terms are simply placeholders and invoke means plus function construction. The Court will address the terms below, but will preface that with an overview of the applicable legal principles.[3]

Three recent Federal Circuit decisions guide this inquiry. In *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) (en banc),[4] the Federal Circuit considered the force of the presumption that use of the word "means" is necessary to invoke means-plus-function under 35 U.S.C. § 112, ¶ 6.[5] The Court held that the presumption is not strong. *Id.* at 1349. It further held that use of the term "module" invoked means- plus-function. *Id.* at 1350. Following the district court, it understood that "module" is simply a generic description for software or hardware that performs a specified function. *Id.*

> Generic terms such as "mechanism," "element," "device," and other nonce words that reflect nothing more than verbal constructs may be used in a claim in a manner that is tantamount to using the word "means" because they typically do not connote sufficiently definite structure and therefore may invoke § 112, para. 6.

*Id.* (quotation omitted). The Court also found it unavailing that one skilled in the art could have programmed a computer to perform that function. "[T]he fact that one of skill in the art could program a computer to perform the recited functions cannot create structure where

---

[3]This discussion is taken from *SecurityProfiling, LLC v. Trend Micro America, Inc.*, 2018 WL 4585279, at*1-2 (N.D. Tex. 2018).

[4]Only Part II.C.1 of the opinion is en banc. *See id.* at 1347 n.3.

[5]After the prosecution of the Patents-in-Suit, this paragraph was recodified as 35 U.S.C. § 112(f).

none otherwise is disclosed." *Id.* at 1351. "The standard is whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Id.* at 1349. "When a claim term lacks the word 'means,' the presumption can be overcome and § 112, para. 6 will apply if the challenger demonstrates that the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Id.* (quoting *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000)).

In *Zeroclick, LLC v. Apple, Inc.*, 891 F.3d 1003 (Fed. Cir. 2018), a panel of the Court reversed a district court holding that "program" and "user interface code" were nonce terms under *Williamson*. The Circuit identified three errors in the district court's approach. "First, the mere fact that the disputed limitations incorporate functional language does not automatically convert the words into means for performing such functions." *Id.* at 1008 (citing *Greenberg v. Ethicon EndoSurgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996)). Second, the district court wrongly removed the terms from their context. *Id.* For example, "user interface code" was not a generic black box, but a reference to a conventional program existing in prior art at the time of the inventions. *Id.* Third, the district court failed to make pertinent fact findings that the terms it identified were used as a substitute for "means." *Id.* at 1009.

Most recently, in *Diebold Nixdorf, Inc. v. Int'l Trade Comm'n*, 899 F.3d 1291 (Fed. Cir. 2018), the Circuit reversed a ruling by the International Trade Commission. The case dealt with the phrase "checque standby unit," which is a component of an automatic teller

machine ("ATM").  The checque standby unit was described as an "escrow" where the ATM could hold a deposit after a customer physically placed items to be deposited into the ATM but before the customer had confirmed the transaction, to allow for the return of the deposit items if the customer cancelled the transaction.  The Court held that "Diebold has shown that the term 'cheque standby unit,' as understood by one of ordinary skill in the art, both fails to recite sufficiently definite structure and recites a function without reciting sufficient structure for performing that function."  *Id.* at 1298.  In reaching that holding, it noted that Diebold was not required to offer extrinsic evidence, but could meet its burden by relying only on intrinsic evidence.  *Id.* at 1299-1300.  The Court also held that the patent owner's expert's testimony did not show that "checque standby unit" had a reasonably well understood meaning in the art, and simply described the phrase in terms of its function.  *Id.* at 1300-01.  The Circuit thus found that § 112, ¶ 6 applied, and then held that the specification did not disclose sufficient structure corresponding to the claimed function so the claims with those terms were indefinite.  *Id.* at 1302-03.

### C. Person of Ordinary Skill In the Art

The parties disagree somewhat on the qualifications of the hypothetical person of ordinary skill in the art ("POSITA").  Noble argues that a POSITA has 15 years of relevant computer or call center experience, or an appropriate undergraduate degree and 10 years pertinent experience.  Acqueon argues that a POSITA would have a BS in computer science or comparable graduate degree, five years experience in call center operations, and two years experience  reviewing source code, particularly relating to database management systems.

Noble supports its contention with attorney argument.[6]  Acqueon supports its position with the Hazy declaration.  Looking at the common elements, Noble says degree plus 10 years experience and Acqueon says degree plus seven years experience.

Reviewing the specifications of the patents in suit, it appears a POSITA would need at least working knowledge of programming, telephony, database management systems, queueing theory, systems integration, and call center operations.  On balance, the Court adopts Acqueon's proposal of a person with an appropriate technical degree and seven years of relevant experience, of which at least five must be in call center system design or operation.

With that background in mind, the Court turns to the disputed terms.[7]  Given the overly large number of terms that the parties desire the Court to construe, the Court's analysis of each term is somewhat abbreviated.

---

[6]Nobel moved belatedly for leave to proffer expert testimony in support of its position. *See* Motion for Leave [83].  The Court has denied that motion for leave.  *See supra* n.1.

[7]Acqueon argues that if certain terms are construed as Noble proposes, those constructions are indefinite.  The Court declines to consider those arguments at the *Markman* stage.

ORDER – PAGE 8

# IV. Disputed Terms

## A. '420 and '478 Patents

### 1. agents

Noble's Construction:

Plain and ordinary meaning; no construction required. Alternatively, "An employee employed to handle communications."

Acqueon's Construction:

An employee in a contact center employed to handle communications.  An agent typically will handle voice communications, but may handle other forms of communication as well.

Court's Construction:

The Court believes that some construction is required as the term "agent" is not necessarily used in its ordinary usage.  Acqueon's construction tracks the glossary of the '257 patent.  In its responsive brief, Acqueon acknowledges that  "in a contact center" need not be in a single building.  *See* Acqueon Response Br. at 13.  The Court believes that it should follow the '257 glossary absent some persuasive reason not to do so.  Accordingly, the Court construes "agent" as: An employee in a contact center (though not necessarily a single building) employed to handle communications.  An agent typically will handle voice communications, but may handle other forms of communication as well.

### 2. in response to

Noble's Construction:

No construction necessary. The phrase is used consistent with its plain and ordinary meaning (i.e., "in reaction to").

Acqueon's Construction:

independently of the passage of time or a regular interval, in reaction to the occurrence of

Court's Construction:

These appear to be words of ordinary usage that are not used in any specialized technical sense. Accordingly, the Court holds that no construction is required. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).

3. based on

Noble's Construction:

Having a causal relationship with

Acqueon's Construction:

By executing, independently of the passage of time or a regular interval, the operation in reaction to

Court's Construction:

These appear to be words of ordinary usage that are not used in any specialized technical sense. Accordingly, the Court holds that no construction is required. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).

4. queue

Noble's Construction:

No construction necessary. The phrase is used consistent with its plain and ordinary meaning. Alternatively, a set of ordered data selected by a set of rules. For example, a set of selected call records from pools having the necessary and sufficient information describing the exact method of transferring call records to dialing devices.

Acqueon's Construction:

Set of rules for selecting call records from pools having the necessary and sufficient information describing the exact method of transferring call records to dialing devices and a data structure that consists of a list of records such that records are added at one end and removed from the other containing any call records assigned to but not yet transferred to dialing devices for dialing devices to call. Alternatively: indefinite.

Court's Construction:

The Court disagrees that no construction is required, as the term is used here in a technical sense. Both proposed constructions have some grammatical issues. Noble's proposed construction suggests that the set of data is selected by a set of rules, rather than ordered by a set of rules. Acqueon's proposed construction – derived from the specifications of the '420 and '478 patents – suggests that a queue *is* a set of rules. Acqueon's proposed construction otherwise adds a variety of limitations from the specification, e.g., call records and pools, that are not inherent in the idea of a queue. Acqueon's proposed construction also requires a "first-in-first-out" or "FIFO" sequence of processing. It does not appear to the Court that the specification limits "queue" to FIFO processing. The Court construes the term "queue" as "a data structure to which ordered sets of data awaiting further processing may

be added, and which are processed in a sequence determined by a set of rules." Regarding indefiniteness, *see supra* n.7.

> 5. "transferring less than all . . . to a plurality of queues" and "transfer[ring] . . . [a] queue . . . to . . . [a] dialing device"

Noble's Construction:

No construction necessary. The phrase is used consistent with its plain and ordinary meaning. Alternatively, associating items in a queue for processing by a dialing device.

Acqueon's Construction:

Sending the list of call records selected by the set of rules for selecting call records from pools and sending them [to/from] a data structure that are added at one end and removed from the other.

Court's Construction:

In view of the Court's construction of "queue" above, and "dialing device" below, no further construction is necessary.

> 6. ordering the plurality of call records in the plurality of queues

Noble's Construction:

No construction necessary. The phrase is used consistent with its plain and ordinary meaning. Alternatively, assigning a relative relationship of call records in various queues.

Acqueon's Construction:

Indefinite.

Court's Construction:

In view of the Court's construction of "queue" above, no further construction is necessary.  Regarding indefiniteness, *see supra* n.7.

7. priority

Noble's Construction:

Plain and ordinary meaning; no construction required.  Alternatively, relative importance.

Acqueon's Construction:

Relative importance given to a call record that determines when it will be processed.

Court's Construction:

This is a word of ordinary usage that is not used in any specialized technical sense. Accordingly, the Court holds that no construction is required.  *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).

8. depletion rate/depleted

Noble's Construction:

Plain and ordinary meaning; no construction required.  Alternatively, rate at which items are being processed.  For example, a rate at which call records are being processed from a queue.

Acqueon's Construction:

Rate of emptying.

Court's Construction:

Acqueon's construction appears to contemplate that call records are removed from a queue as they are processed. As Noble points out, the records may remain in a queue with a flag set to denote that they have been processed. The Court holds that it is not necessary for the construction of depletion rate to resolve the issue of deletion. The Court therefore construes "depletion rate" as the rate at which items are processed.

9. number of call records remaining to be called

Noble's Construction:

Plain and ordinary meaning, no construction necessary. Alternatively, the number of call records that are to be called.

Acqueon's Construction:

Number of call records sent to a queue minus the number of call records in that queue that were already dialed by the dialing device associated with that queue.

Court's Construction:

These are words of ordinary usage that are not used in any specialized technical sense. Accordingly, the Court holds that no construction is required. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).

10. dialing device

Noble's Construction:

No construction necessary. The phrase is used consistent with its plain and ordinary meaning.

Acqueon's Construction:

Governed by 35 U.S.C. Sec. 112 para. 6 (means plus function); indefinite.

Court's Construction:

This term does not include the word "means," and thus is presumed not to invoke means plus function. Both sides appear to agree that this refers to a piece of hardware known in the prior art. The Court believes that the term is not quite self-construing and that a jury would appreciate some assistance with it. The Court therefore construes the term as a device that initiates telephone calls directed to the public switched telephone network.

### 11. predictive dialer

Noble's Construction:

No construction necessary. The phrase is used consistent with its plain and ordinary meaning. Alternatively, a device that originates voice calls in a predictive manner; for example, on the expectation that an agent will be available.

Acqueon's Construction:

A computer-based processing system used in a contact center for originating automatically dialed calls by using a dialing technique wherein multiple calls may be initiated with the expectation that one or more of the calls will be answered and connected to available agents.

Court's Construction:

This again appears to be a reference to a device that is known in the prior art. While it may be a term that is clear to a POSITA, the Court believes that some construction would aid the jury in understanding the term. Noble's proposed construction suffers from

circularity.  Acqueon's proposed construction is derived from the '257 patent glossary term of "predictively dialed," with some alterations.  The Court adopts Acqueon's proposed construction.

> ### 12. connecting agents

Noble's Construction:

Plain and ordinary meaning; no construction required.  Alternatively, establishing a voice communication path to an agent.

Acqueon's Construction:

Joining or linking together on a call upon answering the agent and the answering person associated with the call record.

Court's Construction:

Both proposed constructions appear to introduce unnecessary complexity.  Both sides appear to agree the term means connecting a completed call placed by a dialing device to an available agent.  The Court adopts that construction.

> ### 13. server

Noble's Construction:

Plain and ordinary meaning; no construction necessary.

Acqueon's Construction:

Governed by 35 U.S.C. Sec. 112 para. 6 (means plus function); Indefinite.

Court's Construction:

The term does not use the word "means," and thus presumptively is not a means plus function term. While the term is probably clear to a POSITA, a jury would benefit from some assistance, as in context it probably does not mean, for example, a waiter. The Hazy declaration states that a POSITA would understand "server" to refer well-known, general, off the shelf computer hardware. Hazy argues that the term is indefinite because it does not detail algorithms for performing specified services. The Court believes that is best addressed as an enablement issue. Borrowing from the Hazy declaration, the Court construes "server" as a shared computer on a network that performs certain specialized tasks supporting other computers or processes on the network. The Court does not believe any discussion of virtual machines is necessary at this point, but will address that later if needed.

14. user selects the one or more

Noble's Construction:

Plain and ordinary meaning; no construction required.

Acqueon's Construction:

A person with system administrator rights in a contact center using the system for distributing contact records chooses from a list of predefined . . .

Court's Construction:

These are words of ordinary usage that are not used in any specialized technical sense. Accordingly, the Court holds that no construction is required. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).

15. performance

Noble's Construction:

Plain and ordinary meaning; no construction necessary. Alternatively, (performance metrics) indicators used to ascertain a level of performance or effectiveness in the operation of an action or task.

Acqueon's Construction:

Indefinite.

Court's Construction:

This is a word of ordinary usage that is not used in any specialized technical sense. Accordingly, the Court holds that no construction is required. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Regarding indefiniteness, *see supra* n.7.

<u>16. goal</u>

Noble's Construction:

No construction necessary. Plain and ordinary meaning. Alternatively, (goal) a target, a value to be achieved; (final goal) the ultimate target to be achieved; not an interim target.

Acqueon's Construction:

Indefinite.

Court's Construction:

This is a word of ordinary usage that is not used in any specialized technical sense. Accordingly, the Court holds that no construction is required. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Regarding indefiniteness, *see supra* n.7.

### 17. goal state/status

Noble's Construction:

Plain and ordinary meaning; no construction necessary.

Acqueon's Construction:

Indefinite.

Court's Construction:

These are words of ordinary usage that are not used in any specialized technical sense.

Accordingly, the Court holds that no construction is required. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Regarding indefiniteness, *see supra* n.7.

### 18. preemptive goals based routing

Noble's Construction:

No construction necessary. Plain and ordinary meaning.

Acqueon's Construction:

Indefinite under 35 U.S.C. § 112.

Court's Construction:

Because this phrase appears only in the preamble of the referenced claims, the Court declines to construe it.

### 19. goal strategies

Noble's Construction:

Plain and ordinary meaning; no construction necessary. Alternatively, current status of a goal. Alternatively, (goal strategies) a planned method to achieve a goal. Alternatively (a selected goal strategy), a selected planned method by which to achieve a goal.

Acqueon's Construction:

Indefinite.

Court's Construction:

These are words of ordinary usage that are not used in any specialized technical sense. Accordingly, the Court holds that no construction is required. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Regarding indefiniteness, *see supra* n.7.

20. levels of effort

Noble's Construction:

No construction necessary. Plain and ordinary meaning.

Acqueon's Construction:

Indefinite under 35 U.S.C. § 112.

Court's Construction:

These are words of ordinary usage that are not used in any specialized technical sense. Accordingly, the Court holds that no construction is required. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Regarding indefiniteness, *see supra* n.7.

### B. '183 Patent

1. compliance adherence for calls placed by a contact center

Noble's Construction:

Plain and ordinary meaning; no construction necessary. Alternatively, adhering to compliance requirements when a call is placed by a contact center.

Acqueon's Construction:

The act of binding oneself to observance of conformity in fulfilling official requirements.

Court's Construction:

Because this phrase appears only in the preamble of the referenced claims, the Court declines to construe it.

2. phone device

Noble's Construction:

Plain and ordinary meaning; no construction necessary.

Acqueon's Construction:

Any one of the various forms of telephony devices to communicate via voice, including a conventional telephone, dial pad, headset, and a soft-phone. A telephone device may encompass a smart phone used by an individual, and may have capabilities for sending a text message.

Court's Construction:

The Court agrees with Acqueon that it should use the glossary definition from the '257 patent, and therefore adopts Acqueon's proposed construction.

3. agent

Noble's Construction:

Plain and ordinary meaning; no construction required.  Alternatively, "An employee employed to handle communications."

Acqueon's Construction:

An employee in a contact center employed to handle communications.  An agent typically will handle voice communications, but may handle other forms of communication as well.

Court's Construction:

The Court adopts the same construction applied above.

4. connecting the call with the phone device being used by the agent

Noble's Construction:

Plain and ordinary meaning; no construction required.

Acqueon's Construction:

Joining or linking together on a call upon answering the agent and the answering person associated with the call record.

Court's Construction:

In view of the Court's construction of "phone device" above, no further construction is necessary.  Acqueon's proposed construction adds a further, unnecessary limitation that the call be answered by a person.

5. placing the call

Noble's Construction:

Plain and ordinary meaning; no construction required.  Alternatively: The PBX places the call dialed by an agent once the PBX receives indication that the agent has dialed the call.

Acqueon's Construction:

Indefinite.  Nonetheless, Defendant proposes "[in response to receiving the indication] dial[ing][s] the telephone number as a result of human intervention by an agent indicating each digit of a telephone number on a communications device of some form."

Court's Construction:

These are words of ordinary usage that are not used in any specialized technical sense.  Accordingly, the Court holds that no construction is required.  *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).  Regarding indefiniteness, *see supra* n.7.

6. placing a second call

Noble's Construction:

Plain and ordinary meaning; no construction required.

Acqueon's Construction:

Automatically dialing the telephone number without human intervention by an agent indicating each digit of a telephone number on a communications device of some form.

Court's Construction:

These are words of ordinary usage that are not used in any specialized technical sense.  Accordingly, the Court holds that no construction is required.  *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).

7. originate the call

Noble's Construction:

Plain and ordinary meaning; no construction required.

Acqueon's Construction:

Indefinite.  Nonetheless, Defendant proposes initiate[d] by an agent the agent's intent to dial the telephone number by entering each digit of a telephone number on a communications device of some form.

Court's Construction:

These are words of ordinary usage that are not used in any specialized technical sense. Accordingly, the Court holds that no construction is required.  *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).  Regarding indefiniteness, *see supra* n.7.

8. indication

Noble's Construction:

Plain and ordinary meaning; no construction required.  Alternatively, notification, for example, that an agent has originated a call.

Acqueon's Construction:

Indefinite.  Nonetheless, Defendant proposes: electronic signal generated after an associated event has occurred.

Court's Construction:

This is a word of ordinary usage that is not used in any specialized technical sense. Accordingly, the Court holds that no construction is required.  *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).  Regarding indefiniteness, *see supra* n.7.

### 9. compliant/compliance requirement

Noble's Construction:

Plain and ordinary meaning; no construction necessary.  Alternatively: (Compliant) "In accordance with; for example, in accordance with a compliance requirement." (Compliance Requirement) "A compliance oriented requirement when a call is originated by a contact center."

Acqueon's Construction:

Indefinite.

Court's Construction:

These are words of ordinary usage that are not used in any specialized technical sense. Accordingly, the Court holds that no construction is required.  *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).  Regarding indefiniteness, *see supra* n.7.

### 10. wireless/wireline

Noble's Construction:

No construction necessary.  Plain and ordinary meaning.

Acqueon's Construction:

Indefinite under 35 U.S.C. § 112.  Nonetheless, Defendant proposes: wireless is a mobile telephone number; wireline is not a mobile telephone number

Court's Construction:

The Court somewhat reluctantly determines that no construction is necessary. Acqueon's proposed construction simply substitutes "mobile" for "wireless."  While the

Court is tempted to freelance based on "cellular" versus "land line," that would amount to little more than "I know it when I see it." If that is in fact the case, that amounts to a determination that no construction is needed.

        11. in response to

Noble's Construction:

        Plain and ordinary meaning; no construction necessary. Alternatively: "Telephone numbers that are compliant, but are wireless are provided to an agent; telephone numbers that are compliant, but are wireline, can be called by an autodialer." Alternatively: "As a result of a determination that the call, if placed, would be to a cellular based telephone number and in accordance with one or more compliance oriented policies."

Acqueon's Construction:

        Indefinite.

Court's Construction:

        These are words of ordinary usage that are not used in any specialized technical sense. Accordingly, the Court holds that no construction is required. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Regarding indefiniteness, *see supra* n.7.

        12. computer processor

Noble's Construction:

        No construction necessary. The phrase is used consistent with its plain and ordinary meaning.

Acqueon's Construction:

The intelligent central element of a computer or CPU.

Court's Construction:

The Court somewhat reluctantly determines that no construction is necessary. Acqueon's proposed construction invokes a term of art in computer architecture that appears more limited than "computer processor."

### 13. compliance server

Noble's Construction:

No construction necessary. This phrase is clear and unambiguous, is not indefinite, is not governed by pre-AIA 35 U.S.C. § 112(6), and the term is being used consistent with its plain and ordinary meaning.

Acqueon's Construction:

Governed by 35 U.S.C. § 112 para. 6; indefinite.

Court's Construction:

In view of the Court's construction of "server," above, no further construction is necessary. Because "server" invokes hardware, the Court holds that Acqueon has not rebutted the presumption that this term does not invoke means plus function, as the term "means"is not used.

### C. '257 Patent

### 1. autodialer/automated dialing system

Noble's Construction:

Plain and ordinary meaning; no construction necessary.  Alternatively, "An autodialer is a type of ADS that comports with a legal interpretation of an 'automatic telephone dialing system' in the TCPA, as variously defined by regulatory, judicial, or other authorities at the time of the filing of the patent application."

Acqueon's Construction:

A specific type of ADS that comports with the definition of the same as defined in the TCPA. a computer-based processing system used in a contact center for originating automatically dialed calls.

Court's Construction:

The Court will follow the glossary of the '257 patent, as follows:

ADS – (automated dialing system) a computer-based processing system used in a contact center for originating automatically dialed calls.

Autodialer – a specific type of ADS that comports with the definition of the same as defined in the TCPA.

The Court agrees with Noble that the reference to the TCPA definition implicitly means the statutory definition, as explained by regulation or judicial decisions, as of the time of filing the patent application.

2. predictively dial

Noble's Construction:

Plain and ordinary meaning; no construction required. Alternatively, to dial calls in a predictive manner; a dialing technique wherein multiple calls may be initiated with the expectation that one or more of the calls will be connected to available agents.

Acqueon's Construction:

A dialing technique used by an ADS in a contact center wherein multiple calls may be initiated with the expectation that one or more of the calls will be answered and connected to available agents.

Court's Construction:

The Court adopts Acqueon's proposed construction, which tracks the '257 patent glossary.

### 3. agent

Noble's Construction:

Plain and ordinary meaning; no construction required. Alternatively, "An employee employed to handle communications."

Acqueon's Construction:

An employee in a contact center employed to handle communications. An agent typically will handle voice communications, but may handle other forms of communication as well.

Court's Construction:

The Court follows the construction adopted above, taken from the '257 patent glossary.

ORDER – PAGE 29

### 4. obsolete

Noble's Construction:

Plain and ordinary meaning; no construction required. Alternatively, No longer current with respect to an expectation.

Acqueon's Construction:

No longer in use. Alternatively, that was previously associated with an individual, wherein calls to that number would previously reach the individual, but wherein the number is no longer associated with that individual due to various reasons, including, for example, the number being disconnected for termination of service.

Court's Construction:

In the context of a telephone number, the Court adopts the glossary definition from the '257 patent: a number that was previously associated with an individual, wherein calls to that number would previously reach the individual, but wherein the number is no longer associated with that individual due to various reasons, including, for example, the number being disconnected for termination of service.

### 5. identifier

Noble's Construction:

Plain and ordinary meaning; no construction required. Alternatively, Information used to identify an entity.

Acqueon's Construction:

The name of a database object (table, view, index, procedure, trigger, column, default, or rule) having a limited character length.

Court's Construction:

This is a word of ordinary usage that is not used in any specialized technical sense. Accordingly, the Court holds that no construction is required. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).

<u>6. indicator/confirmation indicator/confirmed/dial-type indicator</u>

Noble's Construction:

<u>Indicator</u>: Plain and ordinary meaning; no construction required. Alternatively, Data or signal indicating a notification.

<u>Confirmation Indicator</u>: Plain and ordinary meaning; no construction required. Alternatively, Data or signal indicating a notification.

<u>Dial-Type Indicator</u>: Plain and ordinary meaning; no construction required. Alternatively, Data or signal indicating information relating to how dialing should occur.

Acqueon's Construction:

<u>Indicator</u>: Indefinite.

<u>Confirmation Indicator</u>: Indefinite under 35 U.S.C. § 112. Nonetheless, Defendant proposes: data indicating new assurance of at least the validity of the telephone number as associated with a particular individual.

<u>Dial-Type Indicator</u>: Indefinite.

Court's Construction:

These are primarily words of ordinary usage that are not used in any specialized technical sense. Accordingly, the Court holds that no construction is required. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Regarding indefiniteness, *see supra* n.7. Regarding dial-type indicator, the Court understands dial-type to refer to the requirement under the TCPA that some telephone numbers may be dialed automatically and some may not.

### 7. record

Noble's Construction:

Plain and ordinary meaning; no construction required.

Acqueon's Construction:

Indefinite. Nonetheless, Defendant proposes: a record represents a collection of data for a particular individual or account organized by a unique identifier.

Court's Construction:

The Court believes that some construction is required. The Court adopts the glossary definition from the '257 patent: a collection of data in a database associated with a common aspect; in the context of a dialing list, a record may represent a collection of data for a particular individual or account.

### 8. database

Noble's Construction:

Plain and ordinary meaning; no construction required.

Acqueon's Construction:

ORDER – PAGE 32

a collection of data structured and organized in a disciplined fashion so that access is possible quickly to information of interest, and made up of two elements—a record and a field.  Alternatively, if not agreed, indefinite.

Court's Construction:

The Court believes that some construction is required.  Acqueon's proposed construction includes the concepts of record and field, which add complexity.  The Court adopts a slight revision of Acqueon's proposed construction: a collection of structured and organized data.

9. processor

Noble's Construction:

Plain and ordinary meaning; no construction necessary.

Acqueon's Construction:

Governed by the framework of 35 U.S.C. § 112(f).  Nonetheless, Defendant proposes the intelligent central element of a computer or CPU.

Court's Construction:

See "computer processor" above.

10. disposition code

Noble's Construction:

Plain and ordinary meaning; no construction required.  Alternatively, Data entered by an agent reflecting the outcome of a call.

Acqueon's Construction:

Information associated with a call processed in a contact center describing an aspect, outcome, or characteristic of the call.

Court's Construction:

The Court will adopt the definition from the '257 patent glossary: information associated with a call processed in a contact center describing an aspect, outcome, or characteristic of the call.

### 11. before the call has ended

Noble's Construction:

Plain and ordinary meaning; no construction required.

Acqueon's Construction:

Indefinite under 35 U.S.C. § 112.

Court's Construction:

These are words of ordinary usage that are not used in any specialized technical sense. Accordingly, the Court holds that no construction is required. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Regarding indefiniteness, *see supra* n.7

### 12. determining by the agent conversing with the answering party

Noble's Construction:

Plain and ordinary meaning; no construction required.

Acqueon's Construction:

Indefinite under 35 U.S.C. § 112.

Court's Construction:

These are words of ordinary usage that are not used in any specialized technical sense.

Accordingly, the Court holds that no construction is required.  *See U.S. Surgical Corp. v.*

*Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).  Regarding indefiniteness, *see supra* n.7

13. no longer associated

Noble's Construction:

Plain and ordinary meaning; no construction required.  Alternatively: No longer

having a relationship or linkage.

Acqueon's Construction:

Indefinite under 35 U.S.C. § 112.

Court's Construction:

These are words of ordinary usage that are not used in any specialized technical sense.

Accordingly, the Court holds that no construction is required.  *See U.S. Surgical Corp. v.*

*Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).  Regarding indefiniteness, *see supra* n.7

14. consent

Noble's Construction:

Plain and ordinary meaning; no construction required.  Alternatively, as to having

received consent: Having received information related to permission of some form.

Acqueon's Construction:

Authorization provided by an individual associated with a telephone number to

receive calls on that telephone number.

Court's Construction:

The Court adopts Acqueon's proposed construction, taken from the '257 patent glossary.

## CONCLUSION

The Court orders that the various patent terms are construed as indicated. The Court has attempted to address all of the terms the parties believe require construction, but acknowledges that it may have missed something. If there are terms requiring construction that are not adequately addressed by this Order, the parties may request clarification. The Court will by separate order establish a schedule for resolution of the remaining issues in the case.

Signed February 15, 2019.

David C. Godbey
United States District Judge

ORDER – PAGE 36